**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HARRISON M.C. CHERDAK, et al.,

    Plaintiffs

    v.

AMERICAN ARBITRATION
ASSOCIATION INC.,

    Defendant

Civil Action No. 19-3767 (CKK)

**MEMORANDUM OPINION**
(March 9, 2020)

Pro se Plaintiffs Harrison Cherdak and Erik Cherdak bring this suit against Defendant

American Arbitration Association, Inc. ("AAA") concerning a now-denied motion to compel

arbitration filed in a separate case by third-party ACT. Inc. Plaintiffs argue that the AAA has

failed to act in accord with its own requirements to determine whether or not the relevant

arbitration clause, the Individual Score Review Arbitration Clause ("ISR Clause") from the

2017-2018 testing year, complies with the AAA's Consumer Arbitration Rules and Consumer

Due Process Protocol. Plaintiffs bring two claims for relief. In Count I, Plaintiffs request relief

under the Declaratory Judgment Act and ask the Court to declare that the AAA has not fulfilled

its requirement to determine whether or not the ISR Clause complies with due process

requirements. In Count II, Plaintiffs contend that the AAA has violated the Maryland Consumer

Protection Act ("MCPA") by falsely representing that it ensures due process compliance of

arbitration clauses. Md. C.L. § 13-301(2). Defendant has moved for dismissal on multiple

grounds, including jurisdictional grounds.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a

whole, the Court will GRANT Defendant's Motion to Dismiss for multiple, independent reasons.

---

[1] The Court's consideration has focused on the following documents:

First, the Court finds that Plaintiffs do not have standing to bring their claims. Second, the Court finds that it does not have personal jurisdiction over the AAA. Third, the Court concludes that venue is improper in the District of Columbia. Fourth, the Court concludes it lacks subject matter jurisdiction over Plaintiffs' claims. Fifth, the Court finds that both claims are barred by arbitral immunity. For these independent reasons, the Court DISMISSES this case.

## I. BACKGROUND

For the purposes of the Motion before the Court, the Court accepts as true the well-pled allegations in Plaintiffs' Amended Complaint. On a motion to dismiss, the Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the United States*, 758 F.3d 296, 315 (D.C. Cir. 2014). Ordinarily, when a plaintiff proceeds pro se, the Court must consider not only the facts alleged in the plaintiff's complaint, but also the facts alleged in the plaintiff's opposition to the defendant's motion to dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("[A] district court errs in failing to consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("The Court, as it must in a case brought by a pro se plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss."). However, the Court notes that Plaintiff Erik Cherdak, the father of Plaintiff Harrison Cherdak, has trained as a lawyer. The Court takes

---

- Def.'s Mot. to Dismiss Pls.' First Am. Compl. ("Def.'s Mot."), ECF No. 16;
- Pls.' Opp'n to Def. AAA's Mot. to Dismiss ("Pls.' Opp'n"), ECF No. 23;
- Def.'s Reply in Support of Def.'s Mot. to Dismiss ("Def.s' Reply"), ECF No. 25.

Plaintiffs have requested a hearing in relation to Defendant's Motion to Dismiss. ECF No. 22. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

judicial notice of *Fitistics, LLC v. Cherdak*, No. 16-cv-112-LO-JFA, 2018 WL 4059375 (E.D. Va. Aug. 23, 2018). *See Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (allowing for judicial notice of cases). In *Fitistics*, the court noted that Plaintiff Erik Cherdak was a "trained attorney," "ha[d] litigated cases before th[at] very [c]ourt in the past," and claimed that he "was recently employed by a top international law firm." 2018 WL 4059375 at *1. Accordingly, the Court finds that Plaintiff Erik Cherdak is not entitled the consideration normally due to pro se plaintiffs. *See Youkelsone v. FDIC,* 910 F. Supp. 2d 213, 228 (D.D.C. 2012) (not affording pro se litigant who was trained as an attorney the flexibility normally given pro se litigants); *Halvonik v. Kappos*, 759 F. Supp. 2d 31, 32 n.1 (D.D.C. 2011) (explaining that a pro se attorney is "presumed to have knowledge of the legal system" and is "not entitled to the same level of solicitude often afforded" pro se litigants).

This case concerns the AAA's alleged failure to determine whether or not the ISR Clause contained in the ACT's 2017-2018 testing materials complies with the AAA's Consumer Due Process Protocol. According to Plaintiffs, the AAA asserts that it "administers consumer disputes that meet the due process standards contained in the Consumer Due Process Protocol and the Consumer Arbitration Rules." Am. Compl., ECF No. 5, ¶ 15 (quoting Ex. 3, ECF No. 5-3, Consumer Arbitration Rules). Plaintiffs further allege that the AAA represents that it "will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the Consumer Due Process Protocol." *Id.* Despite these internal requirements, Plaintiffs contend that the AAA has not determined whether or not the ISR Clause complies with the AAA Consumer Due Process Protocol. *Id.* at ¶ 23.

Plaintiffs further claim that the AAA maintains a Consumer Clause Registry which "lists businesses whose consumer arbitration clauses have been submitted for review by the AAA and determined to substantially and materially comply with the due process standards of the AAA Consumer Due Process Protocol." *Id.* at ¶ 15 (quoting Ex. 6, ECF No. 5-4, Consumer Clause Registry). According to Plaintiffs, the AAA has never listed the ISR Clause on the Consumer Clause Registry. *Id.* at ¶ 13. Instead, Plaintiffs allege that "the AAA has combined the ISR Clause with other contractual type language and other arbitration clauses into what can only be described as a 'combined text' and has deceivingly registered that combined text on behalf of arbitration customer on the AAA Consumer Clause Registry in order to provide knowingly false impressions of the quality and compliance of the ISR Clause." *Id.*

Despite the AAA's failure to comply with its requirements, Plaintiffs allege that the "AAA has threatened Plaintiffs that it will administer an arbitration proceeding involving Plaintiffs under the ISR Clause without making a threshold determination of ISR Clause compliance with the AAA Consumer Due Process Protocol." *Id.* at ¶ 9. Plaintiffs' allegation relates to a separate, ongoing proceeding before the United States District Court for the District of Maryland, *Cherdak v. ACT, Inc*., No 19-cv-1513-TDC (D. Md.). The Court takes judicial notice of the records and proceedings in this related case. *See Dupree*, 666 F.2d at 608 n.1 (allowing for such judicial notice).

In *Cherdak*, these same Plaintiffs brought various claims against the defendant ACT. Plaintiffs' claims all stemmed from the ACT's threat to cancel Plaintiff Harrison Cherdak's ACT score based on suspicion of cheating. *Cherdak v. ACT, Inc*., No 19-cv-1513-TDC, Am. Compl., ECF No. 19, 2. Following Plaintiffs' initiation of suit to bar the ACT from cancelling Plaintiff Harrison Cherdak's score, the ACT filed a Motion to Compel Arbitration and to Stay

Proceedings Pending Arbitration. *Id.* at ECF No. 21. The ACT argued that under both the ISR Clause as well as the "General Arbitration Agreement," an arbitration clause not at issue in this lawsuit, Plaintiffs could challenge the ACT's decision to cancel Plaintiff Harrison Cherdak's score and bring other claims against the ACT only through arbitration. *Id.* at ECF No. 21-1, 8-10. In response, Plaintiffs filed an opposition presenting multiple arguments as to why the arbitration clauses were invalid and unenforceable. *Id.* at ECF No. 26. However, in their initial response, Plaintiffs failed to raise the argument that the AAA was an unavailable arbitration forum. Plaintiffs later moved for leave to file a sur-reply arguing that the ACT had no good faith basis to compel arbitration because the arbitration clauses did not comply with the AAA's Consumer Due Process Protocol. *Id.* at ECF No. 39. However, the District Court of Maryland denied leave to file a sur-reply, finding that there was no basis for such a filing. *Id.* at ECF No. 42. Leave to file Plaintiffs' requested sur-reply was denied on December 9, 2019. On December 18, 2019, Plaintiffs filed this case against the AAA which is currently pending before the Court.

On February 4, 2019, the District Court of Maryland resolved Defendant ACT's motions to compel arbitration and to dismiss. As is relevant to this case, the court denied the ACT's motion to compel arbitration. The Court concluded that the ISR clause was unenforceable because Plaintiff Harrison Cherdak had not been provided any consideration. Additionally, the Court concluded that both arbitration clauses, the ISR Clause and the General Arbitration Agreement, were unenforceable because Plaintiff Harrison Cherdak was a minor when he signed the contracts. *Id.* at ECF No. 51, 11-20.

Turning back to the case currently pending before the Court, the Court notes a somewhat lengthy and convoluted procedural history. As is relevant here, Plaintiffs filed this case on December 18, 2019 and also filed an Emergency Motion for a Temporary Restraining Order.

ECF No. 1. The Court held a teleconference and set a briefing schedule for the motion. Prior to the AAA's response deadline, on January 2, 2020, Plaintiffs withdrew their Emergency Motion. ECF No. 4. Plaintiffs then filed an Amended Complaint and a new Emergency Motion on January 13, 2020. ECF Nos. 5, 6. On January 17, 2019, Plaintiffs filed a Motion for Partial Summary Judgment. ECF No. 10. The Court ordered the AAA to file a response to both the pending Emergency Motion and the Motion for Partial Summary Judgment. ECF No. 11. In addition to both responses, on February 5, 2020, the AAA also filed a Motion to Dismiss. ECF Nos. 16, 17, 18. In the Motion to Dismiss, the AAA argued that this Court does not have jurisdiction over this case. ECF No. 16. Also on February 5, 2020, Plaintiffs filed a Motion to dismiss defense counsel based on an alleged conflict of interest. ECF No. 19. On February 7, 2020, the Court issued an order setting a briefing schedule for the AAA's Motion to Dismiss. ECF No. 21. Because the AAA's Motion argued for dismissal on jurisdictional grounds, the Court stayed the briefing and the consideration of all other pending motions until the Court could ascertain its own jurisdiction. *Id.*

In its Motion to Dismiss, the AAA moves for dismissal of Plaintiffs' claims on multiple jurisdictional grounds as well as for the failure to state a claim for which relief may be granted. The briefing for the AAA's Motion is now complete. And, that Motion to Dismiss is the subject of this Memorandum Opinion.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction; 12(b)(2), for lack of personal jurisdiction; 12(b)(3), for improper venue; and 12(b)(6), for failure to state a claim for which relief may be granted.

A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."). Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. United States Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). At the motion to dismiss stage, a plaintiff "'can satisfy that burden with a prima facie showing.'" *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)). To do so, the plaintiff cannot rest on bare allegations or conclusory

statements but "must allege specific acts connecting [the] defendant with the forum." *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation marks omitted). "To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the plaintiffs may "rest [their] arguments on the pleadings, 'bolstered by such affidavits and other written materials as [they] can otherwise obtain.'" *Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 44 (D.D.C. 2010) (quoting *Mwani*, 417 F.3d at 7).

When presented with a motion to dismiss for improper venue under Rule 12(b)(3), the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). "The court, however, need not accept the plaintiff's legal conclusions as true." *Id.* "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

Finally, pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

As the Court previously indicated, there are multiple, independent grounds which justify the dismissal of Plaintiffs' suit. First, the Court finds that Plaintiffs do not have standing to bring their claims. Second, the Court finds that it does not have personal jurisdiction over the AAA. Third, the Court concludes that venue is improper in the District of Columbia. Fourth, the Court concludes it lacks subject matter jurisdiction over Plaintiffs' claims. Finally, the Court finds that both claims are barred by arbitral immunity. The Court will address each ground for dismissal seriatim.

### A. Standing

First, the Court concludes that this case should be dismissed for want of standing. "Article III of the United States Constitution limits the judicial power to deciding 'Cases' and 'Controversies.'" *In re Navy Chaplaincy*, 534 F.3d 756, 759 (D.C. Cir. 2008) (quoting U.S. Const. art. III, § 2). A party has standing for purposes of Article III if his claims "spring from an 'injury in fact'—an invasion of a legally protected interest that is 'concrete and particularized,' 'actual or imminent,' and 'fairly traceable' to the challenged act of the defendant, and likely to be redressed by a favorable decision in the federal court." *Navegar, Inc. v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing may be denied to a litigant who seeks to present abstract legal questions of wide public interest or to assert the rights of a third party. *Navegar*, 103 F.3d at 998. "[P]laintiffs bear the burden of pleading … concrete facts showing the defendant's actual action has caused

the substantial risk of harm." *Clapper v. Amnesty International, USA*, 568 U.S. 398, 414 n.5 (2013).

In their Opposition, Plaintiffs assert multiple arguments as to why they have standing in this case. The Court will address each argument.

First, Plaintiffs argue that they have standing in this case because they could, at some undetermined future date, be compelled into arbitration by the ACT under the 2017-2018 ISR Clause, which the AAA has not determined to comply with due process. The Court finds this harm to be speculative and the risk of harm to be not imminent.

As an initial matter, the Amended Complaint does not allege that Plaintiff Erik Cherdak is a party to the ISR Clause. That contract is between Plaintiff Harrison Cherdak and the ACT. It is unclear how Plaintiff Erik Cherdak could be forced into arbitration based on a contract to which he is not a party.

Moreover, Plaintiff Harrison Cherdak does not allege that he is party to any arbitration currently set to be administered by the AAA. Instead, he appears to rely on the ACT's motion to compel arbitration which was filed in the case pending before the District Court of Maryland. However, that motion to compel arbitration was recently denied by the court. The court found that the ISR Clause was unenforceable because it was not supported by consideration. The court further determined that both the ISR Clause and the General Arbitration Agreement were unenforceable because Plaintiff Harrison Cherdak was a minor at the time of signing. *Cherdak v. ACT, Inc.*, No 19-cv-1513-TDC, ECF No. 51, 11-20. Because the court found that the ACT's arbitration agreements are unenforceable as to Plaintiff Harrison Cherdak, there is no imminent risk of Plaintiffs facing arbitration before the AAA.

Plaintiffs contend that, even if the court denied the ACT's motion to compel arbitration, there is a risk that the denial could be overturned on reconsideration or on appeal. The Court finds such a risk of harm to be speculative and not imminent. This theory of standing "relies on a highly attenuated chain of possibilities [that] does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410. The ACT has filed a notice of appeal as to the dismissal of its motion to compel arbitration. *Cherdak v. ACT, Inc.*, No 19-cv-1513-TDC, ECF No. 70. However, it remains entirely speculative as to whether or not such relief will be granted. *See* id. at ECF No. 72 (motion by Plaintiffs for order finding as frivolous the ACT's appeal). And, even if on appeal the arbitration clauses were to be found viable, it remains speculative as to whether or not a renewed motion to compel arbitration would be filed by the ACT or granted by the District Court of Maryland. The Court finds that "[s]uch a protracted chain of causation fails both because of the uncertainty of several individual links and because of the number of speculative links that must hold for the chain to connect the challenged acts to the asserted particularized injury." *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996).

As a second theory of standing, Plaintiffs argue that they "would not have had to face and defend against a court-battle relative to ACT's motion to compel arbitration" but for "the AAA's admitted failure to perform a due process compliance determination relative to ACT's 2017-2018 ISR Clause." Pls.' Opp'n, ECF No. 23, 17. In order to establish standing in this method, "the injury has to be 'fairly ... trace [able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976)). When a third party, here the ACT, bears some responsibility for Plaintiffs' harm, standing may

be established where, for example, "the record present[s] substantial evidence of a causal relationship between the [defendant's alleged action] and the third-party conduct, leaving little doubt as to causation and the likelihood of redress." *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 941 (D.C. Cir. 2004). Here, the Court finds that the alleged injury, Plaintiffs' defense against the ACT's motion to compel arbitration in a case pending before the District Court of Maryland, is not fairly traceable to the AAA's alleged failure to ensure that the 2017-2018 ISR Clause complies with due process.

This is not a case where the ACT filed to compel arbitration against Plaintiffs ex nihilo. Instead, Plaintiffs filed suit against the ACT in the District Court of Maryland in order to bar the ACT from cancelling Plaintiff Harrison Cherdak's ACT score. *Cherdak v. ACT, Inc.*, No 19-cv-1513-TDC, Am. Compl., ECF No. 19, 2. It was only in response to Plaintiffs' lawsuit that the ACT filed a motion to compel arbitration. *Id.* at ECF No. 21.

Moreover, in its motion to compel arbitration, the ACT did not rely solely on the disputed ISR Clause. Instead, the ACT argued that the claims in Plaintiffs' lawsuit were subject to arbitration based on the ISR Clause and the General Arbitration Agreement. As the ACT explained, "[t]o the extent that any of Harrison's claims do not fit within the ISR Arbitration Agreement, they fall within the scope of the General Arbitration Agreement, which applies to 'all disputes' (other than disputes involving Individual Score Reviews or infringement of ACT's intellectual property rights) that 'relate in any way' to registering for or taking the ACT test, the reporting of ACT test scores, or the use or disclosure of personal information by ACT." *Id.* at ECF No. 21-1, 14. Accordingly, even if the AAA had, as Plaintiffs request, found the 2017-2018 ISR Clause to be non-compliant with due process, the ACT would still have had grounds to move for arbitration under the General Arbitration Clause.

The Court also considers that, in denying the ACT's motion to compel arbitration, the District Court of Maryland concluded that the ACT's arbitration clauses were unenforceable because no consideration had been provided for the ISR clause and because Plaintiff Harrison Cherdak was a minor when he signed the agreements. *Id.* at ECF No. 51, 11-20. Accordingly, regardless of whether or not the AAA could conduct the arbitration, the ACT's arbitration clauses were unenforceable. This argument as to the unenforceability of the ACT's arbitration clauses was available to Plaintiffs whether or not the AAA determined that the ISR Clause was due process compliant. In fact, as leave to file a sur-reply was denied, Plaintiffs did not even raise the issue of whether or not the AAA was an appropriate forum in litigating the motion to compel.

Any injury to Plaintiffs based on defending the ACT's motion to compel was caused by either Plaintiffs' filing of their lawsuit in the District Court of Maryland or by the ACTs' filing of a motion to compel arbitration. The AAA's alleged failure to ensure that the ISR Clause complied with due process was simply not at issue in Plaintiffs' litigation of the motion to compel. As such, the injury is not "fairly traceable" to the AAA's alleged inaction in ensuring the ISR Clause's compliance with internal due process protocols. *Mideast Systems and China Civil Const. Saipan Joint Venture, Inc. v. Hodel*, 792 F.2d 1172, 1176 (D.C. Cir. 1986). The connection between Plaintiffs' alleged harm and the AAA's alleged failure to review the ISR clause is too tenuous to establish standing. The AAA's alleged contribution to Plaintiffs' harm "is based on a chain of questionable inferences that concern how [the ACT] … would have acted differently had" the AAA conducted a due process review of the ISR Clause. *Id.* at 1777. And, "[a]ssuming these inferences are true, it is clear that [the AAA's] involvement in the harm was

remote at best." *Id.*; *see also Warth v. Seldin*, 422 U.S. 490, 505 (1975) (indirectness of the injury may make it "substantially more difficult to meet the minimum requirements of Art. III").

For these same reasons, the Court notes that the alleged harm caused from Plaintiffs' defending against the ACT's motion to compel arbitration is not redressable by actions on the part of the AAA. Even if the AAA were to find the ISR Clause violative of its due process requirements, Plaintiffs' injury, the necessity of defending against the ACT's motion to compel arbitration, would not be redressed. First, the motion to compel arbitration has already been denied. Second, if for some reason the motion was reinstated, the ACT could move for arbitration, causing Plaintiffs to litigate such a motion, regardless of the AAA's position on the ISR Clause's due process compliance. And, it is conceivable that the ACT could conduct arbitration in a forum other than the AAA. Ex. 1, ECF No. 5-1 (ISR allowing arbitration in a forum other than the AAA if "both you and the ACT agree to submit the matter to an alternative forum"). Third, the ACT presented multiple grounds for compelling arbitration. Even if the AAA found the ISR clause violative of due process, the ACT could still make the same motion under the General Arbitration Clause, which is not at issue in this lawsuit. Plaintiffs' proffered remedy—that the AAA conduct a due process review of the ISR clause—would not alleviate the complained-of harm.

As a final attempt, Plaintiffs appear to argue that they have standing based on possible injuries to the public and to third parties. In their Amended Complaint, Plaintiffs allege that "[a] genuine dispute has arisen between the parties as the AAA has refused to adhere to its published duties to determine and announce to Plaintiffs and to millions of others whether the ISR Clause satisfies and complies with the AAA Consumer Due Process Protocol." Am. Compl., ECF No. 5,

¶ 9. Plaintiffs further allege that the "AAA has wrongfully administered arbitration proceedings under the ISR Clause." *Id.* at ¶ 22.

Insofar as the Plaintiffs are alleging a generalized harm from the AAA's failure to ensure that the ISR Clause complies with due progress, such a generalized harm is not sufficient for standing. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth*, 422 U.S. at 499. Moreover, Plaintiffs cannot take advantage of the alleged harm that third parties have suffered from the AAA's administration of arbitrations pursuant to the ISR Clause. Plaintiffs bring claims only on behalf of themselves, not on behalf of a class. Plaintiffs "generally must assert [their] own legal rights and interests, and cannot rest [their] claim[s] to relief on the legal rights or interests of third parties." *Id.* And, here, Plaintiffs have alleged no facts which would establish their standing based on the alleged harm to third parties.

For the reasons provided above, the Court finds that Plaintiffs have failed to allege that they have "suffered a concrete and particularized injury that is: 1) actual or imminent; 2) caused by, or fairly traceable to, an act that the litigant challenges in the instant litigation; and 3) redressable by the court." *Fl. Audubon Soc.*, 94 F.3d at 663 (internal quotation marks and citations omitted). Accordingly, the Court concludes that this case should be DISMISSED because Plaintiffs lack standing.

**B. Personal Jurisdiction**

Plaintiffs bear the burden of making a prima facie showing that the Court has personal jurisdiction over the AAA. *Mwani v*, 417 F.3d at 7. To make this prima facie showing, Plaintiffs "must provide sufficient factual allegations, apart from mere conclusory assertions, to support

the exercise of personal jurisdiction over the defendant." *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 29 (D.D.C. 2014).

As a separate, independent ground for dismissal, the Court concludes that it does not have personal jurisdiction over the AAA. First, the AAA's contacts with the District of Columbia are not so systematic and continuous as to establish general personal jurisdiction. Second, because Plaintiffs' claims do not arise out of the AAA's contacts with the District of Columbia, specific personal jurisdiction is also not applicable.

Plaintiffs make the same core allegations to support both general personal jurisdiction and specific personal jurisdiction. In their Amended Complaint, Plaintiffs generally allege that personal jurisdiction is proper because "the AAA regularly and purposefully avails itself of the jurisdiction and benefits of the District of Columbia by consistently and regularly seeking and doing business with citizens of the District of Columbia and, in particular, to administer arbitration proceedings in lieu of litigation under the FAA." Am. Compl., ECF No. 5, ¶ 5. As support for this conclusory allegation, in their Opposition, Plaintiffs allege that lawyers in the District of Columbia work on arbitrations conducted by the AAA; that the AAA advertises its services nationally, including in the District of Columbia; that the AAA's website is accessible worldwide, including in the District of Columbia; that the AAA performs arbitrations in the District of Columbia, including arbitrations involving the ACT and students in the District of Columbia; that some lawyers in the District of Columbia perform services for the AAA; and that arbitration between Plaintiffs and the ACT could be conducted by the AAA in the District of Columbia. Pls.' Opp'n, ECF No. 23, 29-33.

The Court begins by examining general personal jurisdiction over the AAA. General personal jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum

connection unrelated to the underlying suit." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56 (D.C. Cir. 2017) (internal quotation marks omitted). District of Columbia law "permits courts to exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District[ ] if the corporation is 'doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (quoting D.C. Code § 13-334(a). "Under the Due Process Clause, such general jurisdiction over a foreign corporation is only permissible if the defendant's business contacts with the forum are 'continuous and systematic.'" *Id.* at 510 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). The District of Columbia Court of Appeals "has indicated that the reach of 'doing business' jurisdiction under § 13–334(a) is co-extensive with the reach of constitutional due process." *Id.* (citing *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1148 (D.C.1985)). The Court finds that Plaintiffs have not alleged that the AAA conducts business in the District of Columbia in a manner continuous and systematic enough to make the AAA "essentially at home" here. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks omitted).

To begin, the parties agree that the AAA is a foreign corporation because it is not "domiciled in, organized under the laws of, or maintaining ... its principal place of business in, the District of Columbia." D.C. Code § 13-422. Instead, the AAA is incorporated in New York and has its principal place of business in New York. Dec. of Tracey Frisch, ECF No. 16-1, ¶¶ 2-3.

Turning now to Plaintiffs' allegations concerning the AAA's contacts with the District of Columbia, the Court finds that those allegations do not establish that the AAA's contacts are continuous or systematic.

Plaintiffs' allegations that lawyers in the District of Columbia either perform services for the AAA or provide representation in arbitrations conducted by the AAA are not sufficient for general personal jurisdiction. The AAA's limited professional contacts with select District of Columbia residents cannot confer general personal jurisdiction. *See, e.g., AGS Int'l Servs. S.A. v. Newmont USA Ltd*., 346 F. Supp. 2d 64, 75-77 (D.D.C. 2004), *abrogation rec'd on other grounds in Bigelow v. Garrett*., 299 F.Supp.3d 34 (D.D.C. 2018) (finding company with a D.C. office which received funding from a D.C. bank and met with D.C. residents was not "doing business" in D.C.);  *Bigelow*, 299 F. Supp. 3d at 42 (finding that receiving payments from donors in D.C., making payments to companies in D.C. for services, and maintaining professional relationships with individuals in D.C. was not sufficient for general personal jurisdiction).

Plaintiffs' allegations concerning the AAA's advertising and website are similarly unavailing. Plaintiffs acknowledge that the AAA advertises nationwide, and Plaintiffs fail to allege anything special about the AAA's advertisements in the District of Columbia. "[H]istorically, advertisements have not been sufficient to establish personal jurisdiction." *Myers v. Holiday Inns, Inc*., 915 F. Supp. 2d 136, 141 (D.D.C. 2013). And, here, Plaintiffs make no factual allegation that the advertisements were particularly targeted to the District of Columbia. *See Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 117 (D.D.C. 2011) (finding that advertisements do not create personal jurisdiction where the advertisements did not specifically target D.C.). Considering the AAA's website, "[t]he mere accessibility of [a] defendant['s] website[ ] ... does not establish[] the necessary minimum contacts" for general personal jurisdiction. *Gorman v. Ameritrade Holding Corp*., 293 F.3d 506, 512 (D.C. Cir. 2002) (internal quotation marks omitted). It is not sufficient that residents of the District of Columbia can access the AAA's website. In order to establish sufficient contacts based on a website, that website must

be interactive and District of Columbia residents must use the website in a continuous and systematic way. *Id.; see also Atlantigas Corp. v. Nisource, Inc*., 290 F. Supp. 2d 34, 52 (D.D.C. 2003) ("[T]he question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do' engage in sustained business activities in a continuous and systematic way."). Plaintiffs have not alleged that the AAA's website is anything more than an "essentially passive website through which customers merely access information." *Id.* at 512 (internal quotation marks omitted). Nor have Plaintiffs met their burden to provide non-conclusory factual allegations that District of Columbia residents use the website to conduct business with the AAA in a continuous and systematic way.

Finally, the Court considers Plaintiffs' allegation that if an arbitration were to be held between the ACT and Plaintiffs, such an arbitration would occur in the District of Columbia. As the Court has previously explained, the ACT's motion to compel arbitration with Plaintiffs was denied by the District Court of Maryland. *Cherdak v. ACT, Inc*., No 19-cv-1513-TDC, ECF No. 51,11-20. As such, any arbitration between Plaintiffs and ACT is, at this point, hypothetical and speculative. The location of such a hypothetical arbitration is even more speculative. Under Plaintiffs' theory, even though the AAA does not have continuous and systematic contacts with the District of Columbia, the AAA could be forced to litigate here because at some undisclosed future time Plaintiffs may be compelled to arbitrate with a third party and that arbitration could occur in the District of Columbia. "Mere speculation as to all these claims will not establish personal jurisdiction over the defendant[]." *Shaheen v. Smith*, 994 F. Supp. 2d 77, 85 (D.D.C. 2013) (citing *GTE New Media Servs. Inc. v. BellSouth Corp*., 199 F.3d 1343, 1349 (D.C. Cir. 2000)).

For these reasons, the Court finds that Plaintiffs have not met their burden to provide

sufficient factual allegations that this Court has general personal jurisdiction over the AAA.

Plaintiffs have not shown that the AAA's contacts with the District of Columbia are sufficiently

continuous and systematic as to make the AAA essentially at home in the District of Columbia.

The Court next considers whether or not Plaintiffs have established this Court's specific

personal jurisdiction over the AAA. Even if general personal jurisdiction is unavailable, a court

retains jurisdiction over a "suit that arises out of or relates to the defendant's contacts with the

forum." *Bigelow*, 299 F. Supp. 3d at 44. "To establish [specific] personal jurisdiction over a non-

resident like [the AAA], we must first decide whether statutory jurisdiction exists under the

District's long-arm statute and, if it does, then we must determine whether an exercise of

jurisdiction would comport with constitutional limitations." *Forras v. Rauf*, 812 F.3d 1102,

1105-06 (D.C. Cir. 2016). Pursuant to the D.C. long arm statute, a court may exercise personal

jurisdiction over a defendant as to

> "a claim for relief arising under the person's—(1) transacting any business in the District
> of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing
> tortious injury in the District of Columbia by an act or omission in the District of
> Columbia; (4) causing tortious injury in the District of Columbia by an act or omission
> outside the District of Columbia [in certain circumstances]…; (5) having an interest in,
> using, or possessing real properly in the District of Columbia; (6) contracting to insure or
> act as surety for or on any person, property, or risk, contract, obligation, or agreement
> located, executed, or to be performed within the District of Columbia…; (7) marital or
> parent and child relationship in the District of Columbia."

D.C. Code § 13-423.

To support the Court's exercise of specific personal jurisdiction, Plaintiffs offer the same

factual allegations as they offered to support general personal jurisdiction. Plaintiffs do not cite

to any particular provision of the D.C. statute which would provide specific personal jurisdiction.

And, the Court finds that Plaintiffs have alleged no "nexus between [the AAA's] particular

contact with the District of Columbia and the claim that the [Plaintiffs] assert[].” *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 15 (D.D.C. 2014) (internal quotation marks omitted).

Plaintiffs' first claim requests a declaratory judgment ordering the AAA to determine whether or not the 2017-2018 ISR Clause complies with its due process requirements. This claim has no nexus to the AAA's contacts with the District of Columbia. Plaintiffs reside in Maryland and Plaintiff Harrison Cherdak signed the ISR Clause in Maryland. The only possible connection between this claim and the District of Columbia is Plaintiffs' allegation that any arbitration between Plaintiffs and the ACT could be carried out in the District of Columbia. However, as the Court previously explained, this allegation—concerning a remote future possibility—is speculative and insufficient to establish personal jurisdiction over AAA.

Plaintiffs' second claim concerns a violation of the MCPA. The Court notes that Plaintiffs elected to bring their consumer claim under Maryland's statute rather than under the District of Columbia's statute, showing the tenuousness of any connection to the District of Columbia. Plaintiffs' MCPA claim concerns the AAA's allegedly false assertions that it ensures that arbitration clauses comply with due process. Again, this claim does not arise from the AAA's contacts with the District of Columbia. Plaintiffs allege that they accessed the AAA's website and statements in Maryland, not in the District of Columbia. As such, Plaintiffs have not alleged a nexus between the AAA's alleged violation of the MCPA and the AAA's contacts with the District of Columbia.

In their Opposition, Plaintiffs argue that, in a Second Amended Complaint, “[i]t would be enough for Plaintiffs … to plead allegations … that the same advertisements received by Plaintiffs in Maryland were also received by them in the District of Columbia.” Pls.' Opp'n, ECF

No. 23, 32-33. The Court begins by noting that no such allegation is made in Plaintiffs' Amended Complaint, which is the legally operative document. Moreover, Plaintiffs' attempt to manufacture personal jurisdiction in this manner would fail. Under the MCPA, "any person may bring an action to recover for injury or loss sustained by him as a result of the practice prohibited by this title." Md. C.L. § 13-408(a). Simply opening the AAA's website in the District of Columbia, after all relevant events of this lawsuit have already taken place, would not cause Plaintiffs an injury or a loss and would not be sufficient to state a MCPA claim. As such, the addition of the proffered allegation would not be sufficient to establish specific personal jurisdiction over the AAA.

The Court finds that Plaintiffs have not met their burden to provide sufficient factual allegations that this Court has specific personal jurisdiction over the AAA. Plaintiffs have not shown that either of their claims arise from the AAA's contacts with the District of Columbia.

For the reasons provided above, the Court finds that Plaintiffs have failed to make factual allegations alleging that this Court has personal jurisdiction over the AAA. The AAA's contacts with the District of Columbia are not so continuous and systematic as to establish general personal jurisdiction. And, Plaintiffs' claims do not arise from the AAA's contacts with the District of Columbia so as to establish specific personal jurisdiction. Accordingly, the Court concludes that this case should be DISMISSED because the Court lacks personal jurisdiction over the AAA.

**C. Venue**

In their Amended Complaint, Plaintiffs allege that venue "is proper under 28 USC § 1391, generally, as the AAA maintains significant offices in the District of Columbia." Am. Compl., ECF No. 5, ¶ 6. Pursuant to § 1391, a civil action may be brought in "(1) a judicial

district is which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). The Court concludes that, under all of the three statutory alternatives, the District of Columbia is an improper venue for this lawsuit.

First, the AAA does not reside in the District of Columbia. 28 U.S.C. § 1391(b)(1). A defendant, which is not a natural person, resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). The Court has already explained that it does not have personal jurisdiction over the AAA in this matter. *See* Supra Sec. III.B. Accordingly, the AAA does not reside in the District of Columbia, and the District of Columbia is not a proper venue under 28 U.S.C. § 1391(b)(1).

Second, a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in the District of Columbia. 28 U.S.C. § 1391(b)(2). Plaintiffs allege no events which occurred in the District of Columbia. Plaintiffs are residents of Maryland, and Plaintiff Harrison Cherdak signed the relevant ISR Clause in Maryland. Plaintiffs do not allege that the AAA took any actions in the District of Columbia which contributed to their claims. Plaintiffs' conclusory allegation that the AAA "maintains significant offices in the District of Columbia" is insufficient to confer venue because Plaintiffs do not allege that any events or omissions giving rise to their claims occurred in that District of Columbia office. Am. Compl., ECF No. 5, ¶ 6; *Murdoch v.*

*Rosenberg & Associates, LLC*, 875 F. Supp. 2d 6, 10 (D.D.C. 2012) ("Defendants' general business connections to the District of Columbia do not suffice to show that this district is where a substantial part of the events or omissions giving rise to the claim[s] occurred."). The only allegation related to the District of Columbia was made in Plaintiffs' Opposition. Plaintiffs allege that a future, hypothetical arbitration between Plaintiffs and the ACT may be conducted in the District of Columbia. However, as the Court has already explained, this allegation is speculative. *See* Supra Sec. III.B. And, as it has yet to occur and may never occur, such a possible, future arbitration is woefully insufficient to show that a "substantial part of the events … giving rise to [Plaintiffs'] claim occurred" in the District of Columbia. 28 U.S.C. § 1391(b)(2). Accordingly, a substantial part of the events giving rise to Plaintiffs' claims did not occur in the District of Columbia, and the District of Columbia is not a proper venue under 28 U.S.C. § 1391(b)(2).

Third, the final avenue for venue applies only "if there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(23); *see also Saudi v. Northrop Grumman Corp.*, 273 F. Supp. 2d 101, 104-05 (D.D.C. 2003) (explaining that venue was improper under § 1391(b)(3) because there were other districts where the action could have been brought). And, there are other districts in which this action could be brought. Pursuant to 28 U.S.C. § 1391(b)(1), this action could be brought in the United States District Court for the Southern District of New York, as that is where AAA resides and general personal jurisdiction could be had. Dec. of Tracey Frisch, ECF No. 16-1, ¶¶ 2-3. And, under 28 U.S.C. § 1391(b)(2), this action could have been brought in the United States District Court for the District Court of Maryland because that is where a substantial part of the events giving rise to Plaintiffs' claims occurred. As there are other districts where venue is proper, Plaintiffs cannot assert venue in the District of Columbia pursuant to 28 U.S.C. § 1391(b)(3). Moreover, even if there was no other district in

which this case could be brought, the Court has already determined that it does not have personal jurisdiction over the AAA in this matter. *See* Supra Sec. III.B. Accordingly, the District of Columbia is not a proper venue under 28 U.S.C. § 1391(b)(3).

For the reasons provided above, the Court finds that Plaintiffs have failed to make factual allegations showing that the District of Columbia is a proper venue for their claims. The AAA does not reside in the District of Columbia, a substantial part of the events or omissions giving rise to Plaintiffs' claims did not occur in the District of Columbia, and this Court does not have personal jurisdiction over the AAA in this matter. Accordingly, the Court concludes that this case should be DISMISSED because the District of Columbia is an improper venue.

## D. Subject Matter Jurisdiction

The Court next considers whether or not it has subject matter jurisdiction over Plaintiffs' claims. The Court concludes that the only possible ground for subject matter jurisdiction is diversity of citizenship under 28 USC § 1332. The Court further concludes that Plaintiffs have failed to make factual allegations showing damages worth the minimum amount in controversy. As such, the Court does not have subject matter jurisdiction in this case.

In their Amended Complaint, Plaintiffs assert two grounds for subject matter jurisdiction—federal question jurisdiction and diversity jurisdiction. Plaintiffs assert federal question jurisdiction because their "counts concern disputes under the U.S. Federal Arbitration Act at 9 USC § 1, *et seq*., and federal questions related thereto." Am. Compl., ECF No. 5, ¶ 4. Plaintiffs fail to acknowledge that the Federal Arbitration Act "does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Southland Corp.v. Keating*, 465 U.S. 1, 15, n.9 (1984); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 25, n.32 (explaining that the Federal Arbitration Act requires "diversity of citizenship or

some other independent basis for federal jurisdiction"). And, Plaintiffs fail to present any other ground for asserting federal question jurisdiction. Plaintiffs bring their Count 1 claim under the Declaratory Judgement Act; but, that Act also does not confer federal question jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum, Co*., 339 U.S. 667, 673-4 (1950) (recognizing that the Declaratory Judgment Act is procedural only and cannot confer jurisdiction). Plaintiffs' Count 2 claim for relief fares no better as it arises under Maryland state law. Am. Compl., ECF No. 5, ¶ 32. In their Opposition, Plaintiffs present no argument as to why the Court should find subject matter jurisdiction based on a federal question. Accordingly, the Court finds that federal question jurisdiction is inapplicable in this case.

Perhaps recognizing the futility of asserting federal question jurisdiction, in their Opposition, Plaintiffs defend their claim pursuant to only diversity jurisdiction. "A federal court has diversity jurisdiction when (1) there is complete diversity of citizenship among the parties (that is, no plaintiff is a citizen of the same state as any defendant) and (2) the 'amount in controversy' is greater than $75,000." *Witte v. Gen. Nutrition Corp*., 104 F. Supp. 3d 1, 4 (D.D.C. 2015) (citing 28 U.S.C. § 1332(a)). There is no dispute that the parties are citizens of different states. Accordingly, the only issue before the Court is whether or not the amount in controversy is greater than $75,000. Plaintiffs alleged damages that "include pain and suffering, loss of opportunities, sleepless nights, and attorneys' fees." Am. Compl., ECF No. 5, ¶ 47. In their Opposition, Plaintiffs also claim damages related to the "meritless litigation to compel arbitration" in their pending District Court of Maryland case against the ACT. Pls.' Opp'n, ECF No. 23, 36.

Plaintiffs have failed to allege factual support for damages from pain and suffering, loss of opportunities, or sleepless nights. It appears that Plaintiffs base these ephemeral damages on

their uncertainty as to whether or not they would be compelled into arbitration by the ACT in their case pending before the District Court of Maryland. The ACT did not file a motion to compel arbitration until August 1, 2019; that motion was denied on February 4, 2020. *Cherdak v. ACT, Inc*., No 19-cv-1513-TDC, ECF Nos. 21, 51. As such, any pain and suffering, loss of opportunities, or sleepless nights were limited in duration. And, Plaintiffs provide no allegations, such as declining a job offer or a need for therapy, to show that these damages are anything other than nominal.

Moreover, these special damages were not caused by the AAA. Instead, they were caused by Plaintiffs' initiation of a lawsuit to stop the cancellation of Plaintiff Harrison Cherdak's ACT score and by the ACT's filing of a motion to compel arbitration. Regardless of whether or not the AAA reviewed the ISR Clause for due process compliance, Plaintiffs would have incurred these special damages. As was previously explained, the ACT moved to compel arbitration under both the ISR Clause and the General Arbitration Agreement. *See* Supra Sec. III.A. Regardless of the due process compliance of the ISR Clause, the ACT could have moved to compel arbitration under the General Arbitration Agreement which is not at issue in this case. And, the District Court of Maryland ultimately denied the motion to compel arbitration on the grounds that the ISR Clause was not supported by consideration and that both arbitration clauses were unenforceable as Plaintiff Harrison Cherdak signed them as a minor. *Id.* In fact, as leave to file a sur-reply was denied, Plaintiffs did not even raise the issue of whether or not the AAA was an appropriate forum in litigating the motion to compel. As such, the availability of the AAA as a forum for arbitration under the ISR Clause was irrelevant to Plaintiffs' litigation concerning the ACT's motion to compel arbitration and to any effects such litigation allegedly had on Plaintiffs.

In their Opposition, Plaintiffs also claim additional damages related to the "meritless" litigation in the District Court of Maryland. Pls.' Opp'n, ECF No. 23, 36. However, Plaintiffs do not specify what additional damages they have incurred or approximate the value of those damages. Moreover, as with the special damages alleged by Plaintiffs, other damages related to the ACT's motion to compel arbitration have too tenuous a connection to the AAA to make the AAA bear the cost. The damages pertaining to the ACT's motion to compel arbitration should be assessed in Plaintiffs' case against the ACT currently pending before the District Court of Maryland, not in this case.

Plaintiffs' only other claim for meeting the amount in controversy is attorneys' fees. "Attorney fees are part of the amount in controversy if they are provided for by statute or contract." *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013). Attorneys' fees are provided for by the MCPA. Md. C.L. § 13-408(b). And, attorneys' fees are allowable under the Declaratory Judgment Act at the Court's discretion. *See Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (explaining that the Declaratory Judgment Act allows relief which is necessary or proper). However, in this case, attorneys' fees are not available as both Plaintiffs are pro se. Such fees are unavailable even though Plaintiff Erik Cherdak is an attorney by training. "[I]t is well established that pro se litigant lawyers cannot recover fees for actions that they have brought on their own behalf, no matter how talented and typically well-compensated that lawyer might be when working on behalf of a client." *Apton v. Volkswagen Group of America, Inc.*, 233 F. Supp. 3d 4, 19 (D.D.C. 2017) (citing *Kay v. Ehrler*, 499 U.S. 432, 435-36 (1991) (concluding that pro se litigant lawyer could not recover attorneys' fees in civil rights action)). Under the Declaratory Judgment Act, attorneys' fees are a matter of the Court's discretion. Because Plaintiffs are pro se and have thus

incurred no fees, the Court finds that, regardless of the merit of their claims, Plaintiffs would not be entitled to attorneys' fees under the Declaratory Judgment Act. The Court also finds that, because they are pro se, Plaintiffs would not be entitled to attorneys' fees under the MCPA. *See Horn v. FDIC*, No. ELH-11-2127, 2011 WL 6132309, at *2 (D. Md. Dec. 8, 2011) (finding that pro se plaintiff was not entitled to attorneys' fees under a statutory scheme similar to the MCPA); *see also Bond v. Blum*, 317 F.3d 385, 389-99 (4th Cir. 2003) (explaining that pro se attorneys are not entitled to attorneys' fees).

Even if the Court were to ignore Plaintiffs' pro se status and find that they were entitled to attorneys' fees, Plaintiffs have failed to make allegations showing that those attorneys' fees would meet the amount in controversy requirement. In their Amended Complaint, Plaintiffs make no allegation even estimating the ultimate cost of attorneys' fees in this matter. In their Opposition, Plaintiffs make the conclusory allegation that "[r]easonable attorney's fees far and away exceed any jurisdictional requirement and are currently estimated to be on the range of over $300,000." Pls.' Opp'n, ECF No. 23, 36. However, Plaintiffs provide no support for this number; instead, the number appears to be purely speculative. It is unclear if Plaintiffs based this figure on a hypothetical billing rate (especially given that Plaintiffs are pro se) multiplied by the number of hours worked or if Plaintiffs simply pulled this figure out of thin air. Courts have rejected attempts to establish the amount in controversy, and thus create diversity jurisdiction, by speculatively asserting a conclusory fee. *See, e.g., Animal Legal Defense Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53, 62-63 (D.D.C. 2017) (finding that the "[d]efendant's showing regarding attorneys' fees is too speculative" to establish diversity jurisdiction); *National Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73-74 (D.D.C. 2014)

("Defendant's speculation or conclusory statements as to the amount of attorneys fees is insufficient to establish a jurisdictional amount.").

Accordingly, the Court concludes that Plaintiffs have not satisfactorily alleged that the amount in controversy exceeds $75,000. Damages related to pain and suffering, loss of opportunities, and sleepless nights are unspecified, conclusory, and appear to be primarily related to the ACT's motion to compel arbitration rather than to the AAA's actions. Other damages related to Plaintiffs' case pending in the District Court of Maryland are likewise insufficiently connected to the allegations against the AAA in this matter. Additionally, appearing pro se, Plaintiffs are not entitled to attorneys' fees. And, even if Plaintiffs could receive attorneys' fees, they have provided no more than speculation as to the amount of those attorneys' fees. Absent satisfactory allegations as to the amount in controversy, this Court's exercise of diversity jurisdiction is inappropriate.

For the reasons provided above, the Court finds that Plaintiffs have failed to make factual allegations showing that this Court has subject matter jurisdiction over Plaintiffs' claims. Neither the Federal Arbitration Act nor the Declaratory Judgment Act provides grounds for federal question jurisdiction. And, Plaintiffs have failed to provide factual allegations showing that their claims meet the amount in controversy requirement for diversity jurisdiction. Accordingly, as an independent ground, the Court concludes that this case should be DISMISSED because the Court lacks subject matter jurisdiction.

**E.  Arbitral Immunity**

As a final independent ground for dismissal, the Court concludes that Plaintiffs cannot state a claim for which relief may be granted. The Court finds that both of Plaintiffs' claims are barred by the doctrine of arbitral immunity.

When acting in a judicial capacity, judges, advocates, witnesses, and others have "absolute immunity … because of the special nature of their responsibilities." *Butz v. Economou*, 438 U.S. 478, 511 (1978). This grant of absolute immunity in the judicial sphere ensures that the judiciary can function without "harassment or intimidation." *Id.* at 512. Due to the similarities between the judicial process and the arbitral process, courts have recognized the doctrine of arbitral immunity. Typically, arbitral immunity has been applied in cases when plaintiffs challenge the authority of an arbitrator to resolve a dispute. *See, e.g., International Medical Group, Inc. v. AAA*, 312 F.3d 833, 843 (7th Cir. 2002) ("We have held, for example, that arbitral immunity should extend to cases where the authority of an arbitrator to resolve a dispute is challenged."); *New England Cleaning Services, Inc. v. AAA*, 199 F.3d 542, 545 (1st Cir. 1999) ("As with judicial and quasi-judicial immunity, arbitral immunity is essential to protect decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.").

As a district court within this Circuit noted, "[t]he majority of circuit courts have extended arbitral immunity to cover not only the individual arbitrator, but the arbitration forum as well." *Young Habliston v. Finra Regulation, Inc*., No. 15-2225, 2017 WL 396580, *6 (D.D.C. Jan. 27, 2017) (citing *Pfannenstiel v. Merrill Lynch*, 477 F.3d 1155, 1159 (10th Cir. 2007) ("[C]ourts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration."); *Int'l Med. Grp., Inc. v. Am. Arbitration Ass'n., Inc*., 312 F.3d 833, 844 (7th Cir. 2002) (finding arbitration forum immune from suit); *New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999) ("[O]rganizations that sponsor arbitrations, as well as arbitrators themselves, enjoy this immunity from civil liability."); *Hawkins v. Nat'l Ass'n of Sec. Dealers Inc*., 149 F.3d

330, 332 (5th Cir. 1998) ("The NASD enjoys arbitral immunity from civil liability for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings."), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith v. Manning*, 136 S. Ct. 1562 (2016); *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 383 (8th Cir. 1996) ("Arbitral immunity protects all acts within the scope of the arbitral process," including those by "sponsoring organizations"); *Austern v. Chi. Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) (holding that the "commercial sponsoring organization" is "entitled to immunity for all functions that are integrally related to the arbitral process"); *Corey v. N.Y. Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982) ("Extension of arbitral immunity to encompass boards which sponsor arbitration is a natural and necessary product of the policies underlying arbitral immunity.")). The extension of arbitral immunity to the arbitration forum is logical because, otherwise, immunity would be "illusory" as plaintiffs would "merely shift the liability [from the arbitrators] to the sponsoring association." *Corey*, 691 F.2d at 1211; *see also Olson*, 85 F.3d at 383 ("Without this extension, arbitral immunity would be almost meaningless because liability would simply be shifted from individual arbitrators to the sponsoring organization."). While the United States Court of Appeals for the District of Columbia Circuit has yet to opine on this issue, the Court is persuaded by the purposes of arbitral immunity, as well as the bulk of case law, that arbitral immunity extends to arbitration forums, such as AAA.

With this background in mind, the Court finds that the AAA is immune from Plaintiffs' Count 1 claim under the Declaratory Judgment Act. "Arbitral immunity protects all acts within the scope of the arbitral process." *Olson*, 85 F.3d at 383. In their Count 1 claim, "Plaintiffs seek a declaration from this Court declaring that the AAA has not performed a threshold determination as to whether the ISR Clause … complies with the AAA Consumer Due Process Protocol and

Rules." Am. Compl., ECF No. 5, ¶ 29. Plaintiffs further contend that the AAA cannot administer arbitration prior to making such a determination. *Id.* However, the AAA's determination of whether or not it can conduct an arbitration pursuant to a particular clause is an "act[] within the scope of the arbitral process." *Olson*, 85 F.3d at 383. The alleged omission of which Plaintiffs complain, ensuring that the 2017-2017 ISR Clause is due process compliant, is part of the AAA's adjudicative functions because such a review determines which arbitrations the AAA will and will not adjudicate. The performance of such a gatekeeping function is a decisional act "within the scope of the arbitral process." *Austern*, 898 F.2d at 886.

Plaintiffs argue that arbitral immunity should not provide protection for the AAA's own wrongdoing in failing to follow its due process requirements. However, if an arbitration forum could not claim immunity because a plaintiff alleged that the forum acted wrongfully, "the exception would swallow the rule." *Young Habliston*, 2017 WL 396580 at *7. Moreover, courts in similar situations have applied arbitral immunity even when the arbitration forum is alleged to have violated its own regulations and requirements. *Id.* (applying arbitral immunity despite allegations that the arbitration forum had violated its own regulations); *Olson*, 85 F.3d at 383 ("A sponsoring organization is immune from civil liability for improperly selecting an arbitration panel, even when the selection violates the organization's own rules."); *Austern*, 898 F.2d at 886-87.

Because the AAA's decision regarding whether or not it has performed a sufficient review of an arbitration clause's due process compliance is an act within the arbitral process, the Court finds that the AAA is immune from Plaintiffs' Count 1 claim.

The Court next considers whether or not the AAA is immune from Plaintiffs' Count 2 claim under the MCPA. In support of the argument that their MCPA claim is not barred by

arbitral immunity, Plaintiffs cite primarily to *Hopper v. American Arbitration Association, Inc*., 708 Fed. App'x 373 (9th Cir. 2017) (unpublished). In *Hopper*, the plaintiff appealed the dismissal, on the basis of arbitral immunity, of his false advertising claim against the AAA. 708 Fed. App'x at 373. The court reversed the dismissal finding that "[c]ommercial advertisement, designed to sway individuals to choose AAA over its competitions … is distinct and distant from the decisional act of an arbitrator." *Id*. As such, the court found that arbitral immunity for the plaintiff's false advertising claims was inappropriate.

The Court begins by noting that *Hopper* in not a decision within this Circuit and is not binding on this Court. Moreover, because *Hopper* is unpublished, the decision is not even binding on those courts within the Ninth Circuit. And, the entirety of the *Hopper* opinion is two-paragraphs and includes little analysis. Finally, in *Hopper*, the plaintiff brought challenges under a California law which is not at issue in this case.

Plaintiffs did not point to any cases which have followed the result in *Hopper*. And, the only case that the Court could find which cites *Hopper* rejected its analysis. In *Vogt v. American Arbitration Association*, No. CC-02-2019-C-94, 2019 WL 2618065 (W. VA. Cir. Ct. June 22, 2019), the plaintiff brought a false advertising claim against the AAA. Refusing to follow *Hopper*, the court determined that "permitting such a claim would seriously undermine the immunity conferred by statute and would present and would elevate the form of the cause of action over the absolute immunity afforded arbitrators." *Vogt*, 2019 WL 2618065 at *4. As with the court in *Vogt*, this Court finds unpersuasive the limited analysis in *Hopper*.

In *Hopper*, the plaintiff claimed that misleading statements in the AAA's direct mail and various website pages convinced him, and others, to choose the AAA over other arbitration companies. *Hopper v. AAA*, No. CV-16-1124-RGK-AGRx, 2016 WL 7443240, *1 (C. D. Cal.

March 22, 2016). Conversely, here, Plaintiffs' MCPA challenge is focused on the AAA's published arbitration rules and consumer clause registry. Plaintiffs do not allege that they received any direct mail containing alleged misstatements. And, Plaintiffs do not even claim that alleged misstatements caused them to choose the AAA over another arbitration forum. Instead, Plaintiffs' challenge is based only on the AAA's non-compliance with its published regulations concerning which arbitration clauses it will accept. While Plaintiffs attempt to present their MCPA claim under the guise of false advertising, the Court considers the substance of Plaintiffs' claim rather than its framing. And, in substance, Plaintiffs are challenging whether or not the AAA complied with its internal regulations. The AAA's statement of its own procedures and requirements is not analogous to the commercial actions which were challenged in *Hopper*.

As such, Plaintiffs' Count 2 claim under the MCPA is barred by arbitral immunity for the same reasons that Plaintiffs' Count 1 claim is barred. Looking to the substance of Plaintiffs' MCPA claim, Plaintiffs challenge the AAA's compliance with their own requirements and rules of procedure. This is the same challenge Plaintiffs make in their Declaratory Judgment Act claim. The Court concludes that Plaintiffs' MCPA claim is barred by arbitral immunity because it challenges the performance or omission of the AAA's gatekeeping function in reviewing arbitration clauses for due process compliance, which is a decisional act "within the scope of the arbitral process." *Austern*, 898 F.2d at 886. The "failure to extend immunity to the AAA in these circumstances"—a challenge to the AAA's compliance with its internal regulations—"could discourage it from sponsoring future arbitrations." *New England Cleaning Servs.*, 199 F.3d at 546.

For the reasons provided above, the Court finds that Plaintiffs have failed to state a claim for which relief can be granted. Both of Plaintiffs' claims challenge the AAA's acts or omissions

within the scope of the arbitral process and are barred by arbitral immunity. Accordingly, the Court concludes that this case should be DISMISSED because Plaintiffs have failed to state a claim for which relief may be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the AAA's Motion to Dismiss. This case is dismissed for five independent reasons. First, the Court concludes that Plaintiffs do not have standing to bring their claims. Second, the Court concludes that it does not have personal jurisdiction over the AAA. Third, the Court concludes that venue is improper in the District of Columbia. Fourth, the Court concludes that it does not have subject matter jurisdiction over Plaintiffs' claims. And, finally, the Court concludes that Plaintiffs have failed to state a claim for which relief may be granted as Plaintiffs' claims are barred by the doctrine of arbitral immunity. For these reasons, this case is DISMISSED.

Because the Court lacks jurisdiction over this case, the Court cannot resolve the other pending motions.[2]

An appropriate Order accompanies this Memorandum Opinion. The Clerk of the Court shall mail a copy of this Memorandum Opinion to Plaintiffs at their addresses of record.

        /s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

---

[2] Such pending Motions include Plaintiffs' Emergency Motion for a Temporary Restraining Order, ECF No. 6; Plaintiffs' Motion for Partial Summary Judgment as to Count II of their First Amended Complaint, ECF No. 10; Defendant's Motion for Pro Hac Vice Admission of Theodore L. Hecht, ECF No. 14; and Plaintiffs' Cross-Motion for an Order Disqualifying the Law Firm of Schnader, Harrison, Segal & Lewis LLP, ECF No. 19.